**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ISAIAS CASTELAN LOZANO,

                    Petitioner,

    v.

JESSICA SAGE, et al.,

                 Respondents.

CIVIL ACTION NO. 3:26-CV-01800

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Isaias Castelan Lozano ("Lozano") brings this petition for writ of habeas corpus. (Doc. 1). On June 29, 2026, Lozano filed the instant petition, requesting that Respondents Jessica Sage, John Rife, Markwayne Mullin, Todd Lyons, and Todd Blanche[1] release him from custody at the Federal Correctional Institution Lewisburg ("FCI Lewisburg") or provide him with an immediate bond hearing. (Doc. 1, at 2). On July 10, 2026, Sage filed a response to Lozano's petition. (Doc. 6). On July 17, 2026, Lozano filed a

---

[1] Pursuant to the "immediate custodian rule," the only proper Respondent in this case is Jessica Sage ("Sage"), Warden of FCI Lewisburg. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Lozano is detained at FCI Lewisburg, Sage is the proper Respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, all Respondents other than Sage are **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Lozano on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at \*9-\*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at \*8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

timely traverse. (Doc. 7). For the following reasons, Lozano's petition (Doc. 1) is **GRANTED**, and Sage is **ORDERED** to release Lozano from custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Lozano's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 6). Lozano is a citizen of Mexico, who entered the United States on March 13, 2004, without inspection. (Doc. 1, at 5; Doc. 6, at 4). Lozano has lived in the United States for twenty-two years, and Lozano has four United States citizen children. (Doc. 1, at 5; Doc. 7, at 2). On October 10, 2025, Lozano pled guilty to Recklessly Endangering Another Person ("REAP"), and a Philadelphia court sentenced Lozado to twelve months of probation. (Doc. 1, at 5; Doc. 6, at 5).

On October 16, 2025, ICE encountered and arrested Lozano while conducting a surveillance operation. (Doc. 6, at 5). ICE then issued Lozano a notice to appear and placed him in removal proceedings in the Elizabeth Immigration Court. (Doc. 1, at 5; Doc. 6, at 5). On October 24, 2025, Lozano filed a 42B cancellation of removal and adjustment of status application based on the hardship his removal would have on his United States citizen children. (Doc. 1, at 5). On December 16, 2025, an immigration judge denied Lozano's 42B application and found Lozano removable pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Doc. 1, at 5; Doc. 6, at 5). On January 14, 2026, Lozano appealed his removal order and the denial of his 42B application to the Board of Immigration Appeals ("BIA"). (Doc. 1, at 5; Doc. 6, at 5). Lozano's appeal remains pending. (Doc. 1, at 5).

On February 3, 2026, Lozano filed his first petition for writ of habeas corpus in the Western District of Pennsylvania on similar grounds as the instant habeas petition. (Doc. 1,

at 5). At the time Lozano filed his first habeas petition, he was detained at the Moshannon Valley Processing Center in the Western District of Pennsylvania. (Doc. 1, at 5). On May 1, 2026, the Honorable Stephanie L. Haines denied Lozano's first habeas petition without prejudice, stating that Lozano should first request a *Joseph* hearing before an immigration judge to determine whether he is properly detained under 8 U.S.C. § 1226(c).[2] (Doc. 1, at 6). Lozano has been in immigration detention for over nine months. (Doc. 1, at 5).

## II.  LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus

---

[2] Lozano's first habeas petition pursuant to 28 U.S.C. § 2241, filed in the Western District of Pennsylvania, does not bar the Court from reviewing Lozano's instant habeas petition. The prohibition against successive petitions filed under 28 U.S.C. § 2254 or 28 U.S.C. § 2255 does not apply to petitions for habeas corpus filed in the immigration context under 28 U.S.C. § 2241. *Zayas v. I.N.S.*, 311 F.3d 247, 255-56 (3d Cir. 2002); *Abdel-Whab v. Secretary of Dept. of Homeland Sec.*, 132 F. App'x 988, 989-90 (3d Cir. 2005). The abuse of writ doctrine may apply to bar successive immigration habeas petitions when a successive petition raises grounds identical to those previously raised and rejected on the merits. *Esogbue v. Holmes*, 142 F. App'x 98, 100 (3d Cir. 2005) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)); *Zayas*, 311 F.3d at 255-56; *Abdel-Whab*, 132 F. App'x at 989-90. However, Judge Haines did not decide Lozano's first immigration habeas petition on the merits but instead denied Lozano's petition without prejudice to reopening once he exhausted a further administrative remedy. *Castelan Lozano v. Oddo*, 3:26-CV-00144, Dkt. No. 10. Specifically, Judge Haines directed Lozano to request a *Joseph* hearing with the immigration court to determine whether his conviction was one that would subject him to mandatory detention under 8 U.S.C. § 1226(c). *Castelan Lozano v. Oddo*, 3:26-CV-00144, Dkt. No. 10. The government no longer avers that Lozano should be detained pursuant to 8 U.S.C. § 1226(c). (*See* Doc. 6, at 16-17). As Judge Haines did not reject Lozano's first habeas petition on the merits, the Court is not barred from reviewing Lozano's instant habeas petition. *See Esogbue*, 142 F. App'x at 100; *Zayas*, 311 F.3d at 255-56; *Abdel-Whab*, 132 F. App'x at 989-90.

3

and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting

*Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in

only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a

noncitizen's habeas petition, courts evaluate whether the government complied with

regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*,

385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and

constitutional notice requirements prior to detaining a non-citizen petitioner and granting the

petitioner's habeas petition). A court may order a bond hearing or release if the Court

determines that a noncitizen habeas petitioner is entitled to such relief under relevant

constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa.

2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the

due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025

WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a

bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et

al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the

appropriate remedy when the government detains a petitioner under an inapplicable statute,

violating due process, is release from custody).

### III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter

jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v.

Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S.

500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus

where a petitioner is "in custody under or by color of the authority of the United States . . . in

4

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). In *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the INA strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought'

to remove them"). Thus, the Court retains jurisdiction over Lozano's habeas petition because the legal questions of whether § 1225(b) or § 1226(a) applies to Lozano and whether Lozano is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

IV.    **DISCUSSION**

Lozano contends that Sage improperly detained him pursuant to 8 U.S.C. § 1225(b)(2)(A), in violation of the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 14-15). Lozano avers that he should be properly detained pursuant to 8 U.S.C. § 1226 because Lozano lived in the United States for twenty-two years before ICE apprehended Lozano and placed him in removal proceedings. (Doc. 1, at 9-10). Lozano also avers that he should be detained pursuant to § 1226(a), not § 1226(c), because his REAP conviction does not trigger mandatory detention pursuant to 8 U.S.C. § 1226(c), as REAP is not a crime of moral turpitude. (Doc. 1, at 6).

Sage counters that Lozano is properly detained without an opportunity for bond under 8 U.S.C. § 1225(b)(2)(A) because he is present in the United States without having been lawfully admitted. (Doc. 6, at 18). Sage also contends that Lozano's detention under 8 U.S.C. § 1225(b)(2)(A) does not violate the Due Process Clause of the Fifth Amendment because Lozano, a noncitizen without admission, is limited to the due process rights provided by the INA. (Doc. 6, at 17). The Court will first address whether Lozano was properly detained under § 1225(b)(2)(A). The Court will then address whether Lozano's detention violates due process.

A.  SAGE IMPROPERLY DETAINED LOZANO UNDER 8 U.S.C. 1225(B)(2)(A).

Sage improperly detained Lozano under 8 U.S.C. § 1225(b)(2)(A), when Sage should have detained Lozano under 8 U.S.C. § 1226(a). Lozano avers that his prolonged mandatory detention is unlawful because he has already been in the United States for several years and is not presently seeking admission into the United States. (Doc. 1, at 12). Lozano also provides that his prolonged mandatory detention is unlawful because ICE charged him as an alien present without admission or parole and because he has never committed an aggravated felony that would subject him to the mandatory detention provision of 8 U.S.C. § 1226(c). (Doc. 1, at 12). Sage counters that Lozano falls squarely under § 1225(b)(2)(A), which mandates the detention of noncitizens who are present in the United States without lawful admission. (Doc. 6, at 18).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion

and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and

across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[3] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody

---

[3] The Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

Section 1226(c) of the INA provides for the mandatory detention of, among others, noncitizens present in the United States, who were convicted of certain crimes. 8 U.S.C. § 1226(c). In 2025, Congress passed the Laken Riley Act, which amended § 1226(c) to add new categories of noncitizens who are subject to mandatory detention. *Lopez Cruz v. Jamison*, No. 26-2278, 2026 WL 1257329, at *4 (E.D. Pa. May 7, 2026). Since the passage of the Laken Riley Act, criminal aliens under § 1226(c) are any alien who,

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year,
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,

> 8 U.S.C. § 1226(c)

Section 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 583 U.S. at 305. Under Pennsylvania law,

REAP is classified as a misdemeanor offense, and a REAP conviction alone "does not establish that a [p]etitioner committed a crime that resulted in death of serious bodily injury as defined by the Laken Riley Act." *Santos-Barahona v. Jamison*, 2026 WL 1047056, at *2 (E.D. Pa. April 17, 2026) (citing *Lopez v. McShane*, No. 26-CV-771, 2026 WL 767779 (E.D. Pa. March 18, 2026)). The Third Circuit has also found that a conviction for REAP under Pennsylvania law is not enough to establish that a crime was a crime of moral turpitude as defined by 8 U.S.C. § 1227(a)(2)(A)(ii). *Mahn v. Att'y Gen. of United States*, 767 F.3d 170, 174 (3d Cir. 2014).

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 21, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before

11

ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi,* 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A) or § 1226(c), applies to Lozano's detention. Section 1225(b)(2)(A) of the INA does not apply to Lozano's detention because Lozano is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto,* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Lozano is not actively attempting to come into the United States. Lozano has lived in the United States since March 2004. (Doc. 1, at 5). Based on the plain meaning of the phrase "seeking admission," Lozano sought admission when he entered the United States on March 13, 2004. (Doc. 1, at 5); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization").

Likewise, § 1226(c) does not apply to Lozano because his REAP conviction alone does not establish that Lozano committed a crime that resulted in death or serious bodily injury or a crime of moral turpitude. *Santos-Barahona,* 2026 WL 1047056, at * 2; *Mahn,* 767 F.3d at 174. Further, Sage presents no evidence or argument indicating that Lozano's committed a crime that puts him within the ambit of § 1226(c). (*See* Doc. 6). Instead, § 1226(a) applies to

applicants for admission, like Lozano, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *see also Soto,* 807 F. Supp. 3d at 400, 408 (collecting cases). Accordingly, after the October 16, 2025 ICE arrest, Sage improperly detained Lozano under § 1225(b)(2)(A), when she should have detained Lozano under § 1226(a).

   B.   SAGE VIOLATED LOZANO'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING HIM TO MANDATORY DETENTION.

Sage's continued mandatory detention of Lozano under § 1225(b)(2)(A) violates Lozano's procedural due process rights. Lozano avers that his prolonged mandatory detention violates the Due Process Clause of the Fifth Amendment because DHS has not provided him with any process or an opportunity to contest his mandatory detention. (Doc. 1, at 15-16). Sage counters that Lozano is only entitled to due process afforded to applicants for admission by the INA. (Doc. 6, at 17). Sage also avers that Lozano has had ample available process in his current removal proceedings. (Doc. 6, at 45).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and

13

(3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Lozano's favor because Sage has deprived Lozano of his physical liberty with improper detention without the possibility of bond under § 1225(b)(2)(A) for over nine months. (Doc. 7, at 5); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. Lozado's prolonged mandatory detention also prevented him from being present for the birth of his fourth child. (Doc. 7, at 3). The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Lozano's favor because Lozano remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Lozano's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F.

14

Supp. 3d at 409-10. Lozano does not pose a risk to the government's interest in detaining him. Lozano has lived in the United States for twenty-two years with little issue. (Doc. 1, at 5). In that time, Lozano's only encounter with the law is his REAP conviction, a second-degree misdemeanor, to which Lozado pled guilty and under which Lozano is subject to probation. (Doc. 6, at 4-5). Further, Lozano has demonstrated compliance with the immigration process by following the requirements of his ongoing removal proceedings. (Doc. 1, at 5). Lozano's application for adjustment of status and strong family ties to the United States also indicate that Lozado is likely to appear in immigration court throughout proceedings. (Doc. 1, at 5). As each *Mathews* factor weighs in Lozano's favor, Sage's mandatory detention of Lozano under § 1225(b)(2)(A) violates Lozano's procedural due process rights. Accordingly, Lozano's petition for writ of habeas corpus is **GRANTED**, and Sage is **ORDERED** to release Lozano from custody.

V.    <u>CONCLUSION</u>

For the foregoing reasons, Lozano's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Lozano from custody. Sage is barred from re-detaining Lozano under § 1225(b)(2)(A) absent a material change in circumstances. Lozano may move to reopen this matter if Sage seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: July 24, 2026                    /s/ *Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States District Judge**

15